## CABLE CO. OF ALABAMA v. STEWART.

### (Circuit Court of Appeals, Fifth Circuit. December 5, 1911.)

### No. 2,290.

SALES (§ 473*)—CONDITIONAL SALES—VALIDITY—RECORD UNDER ALABAMA STATUTE.

Under Code Ala. 1907, § 3394, which provides that contracts for the conditional sale of personal property shall be void "against purchasers for a valuable consideration, mortgagees and judgment creditors without notice thereof," unless in writing and recorded as therein prescribed, a written contract for the conditional sale of a piano, providing that title shall remain in the seller until full payment of the purchase price "as evidenced by contract note of even date herewith," which is complete in itself, showing the amount due thereon, the time of payment, and all facts necessary to fully inform any one investigating where the title is and the amount necessary to pay to effect the passing of title, if properly recorded is effective to render the condition valid as against all third persons, and it is unnecessary to also record the note, which contains no provisions which make the contract essentially different in legal effect from that stated in the recorded instrument.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 1377–1390; Dec. Dig. § 473.*

What constitutes a contract of conditional sale, see note to Dunlop v. Mercer, 86 C. C. A. 448.]

Petition to Superintend and Revise a Decree of the District Court of the United States for the Northern District of Alabama.

For opinion below, see In re Bazemore, 189 Fed. 236.

In the matter of B. B. Bazemore, bankrupt. On petition of the Cable Company of Alabama to revise an order dismissing its petition for reclamation of property. Reversed.

Robert E. Smith, for petitioner.

D. D. Trimble, for respondent.

Before PARDEE and SHELBY, Circuit Judges.

SHELBY, Circuit Judge. The subject of controversy in this suit is a piano. It is claimed by the Cable Company, and it is also claimed by W. T. Stewart, as the trustee in bankruptcy of B. B. Bazemore. There is no dispute as to the facts, which are as follows: The Cable Company sold the piano to Bazemore by a written contract of conditional sale in these words:

"Boyles, Ala., 9–15, 1908.

"State of Alabama, County of Jefferson.

"This witnesseth, that I have this day purchased of the Cable Company of Alabama, one Conover Piano, Style L. M., No. 104,614, with extras as follows: Stool, bench, and scarf, for which I agree to pay to its order the sum of $500.00. Cash payment special service, Trade $50.00. Balance $450.00, as follows: $25.00 Oct. 15, 1908, then $15.00 on the 15th day of each month thereafter until paid, with interest from date at the rate of 4 per cent. per annum, as evidenced by contract note of even date herewith. Title to said property to remain in the Cable Company, Birmingham, Ala., or its assigns, until said obligation is fully satisfied.          B. B. Bazemore. [L. S.]

"Witness: E. G. Lawley."

The contract was proved, as shown by the following indorsement on it:

"State of Alabama, County of Jefferson.

"Personally appeared before the undersigned notary public E. G. Lawley, who after being duly sworn, deposes and says that he saw B. B. Bazemore sign, seal and deliver the within agreement for the purposes herein set forth, and that he subscribed the same as witness.          E. G. Lawley.

"Sworn to and subscribed before me, this 4th day of November, 1908.
                                        "J. Willay, Notary Public."

The contract was duly filed in the office of the probate judge of Jefferson county, Ala., on November 5, 1908, and was there recorded on November 23, 1908. The "contract note" referred to in the contract of sale was made on the same date, on a separate shèet of paper, and is as follows:

"State of Alabama, County of Jefferson.

"The Cable Company of Alabama, at Birmingham, Alabama, have this day agreed to sell to B. B. Bazemore, a certain piano described as follows: One Conover, Style L. M., No. 104,614, with extras as follows: stool, bench and scarf, for the total price of five hundred dollars ($500.00), on which B. B. Bazemore has this day paid ———— dollars, and in trade, viz.: Services rendered valued at $50.00. The balance of four hundred fifty dollars to be paid as follows: Twenty-five dollars Oct. 15, 1908, then $15.00 on the 15th of each month thereafter until paid. Said balance to draw interest at four per cent. per annum from date. Said payments to be made at the Cable Piano Company office, Birmingham, Ala., or to be forwarded by postal money order, draft, registered letter, or express prepaid:

"The said B. B. Bazemore agrees to keep said instrument at his residence, on Fifth street in Boyles, to take good care of same and not to remove said instrument therefrom, nor to part with the possession thereof, without the written consent of the Cable Company of Alabama, or its assigns, indorsed on this agreement. It is agreed that the title to and ownership of said instrument shall remain in said the Cable Company of Alabama until the whole of the purchase money is paid.

"In the event that any of the above payments shall not be made as they become due, the Cable Company of Alabama, or its agent or attorney, is hereby authorized to enter the premises where said instrument may be and remove the same without legal process, and in addition to the right of the Cable Company of Alabama to enter the premises where said instrument is and remove the same without legal process, it is agreed that said the Cable Company of Alabama, when any of the above payments become due and are not paid, if it chooses, may sue and recover judgment on the whole debt, notwithstanding some or all of said payments may not have all become due, together with 10 per cent. attorney's fees on said indebtedness, and that this judgment shall be a preferred debt and first lien on said instrument. It is further agreed that if said the Cable Company of Alabama, or its assigns, shall exercise its option to retake said instrument as above described, and rescind said contract, that all payments made by said bargainee to said the Cable Company of Alabama, or its assigns, under this contract shall be treated as liquidated damages for the use of and damages to said instrument, and shall be retained by said the Cable Company of Alabama, or its assigns, as liquidated damages. The maker or makers hereof hereby waive all rights to exemptions, as to real and personal property, secured to same and family or families, by the Constitution and laws of this or any other state and the United States, as against the payment of this debt. Loss in case of fire or accident to be borne by said bargainee. This contract is subject to the approval of the Cable Company of Alabama. It is expressly agreed that the Cable Company of Alabama is not to be bound by any provisions other than those contained in this contract.

"Witness our hands and seals this 15th day of September, 1908.

"Witness: E. G. Lawley."                    "B. B. Bazemore.

This "contract note" was never filed for record.

The sale was made in Jefferson county, Ala., and the piano was immediately delivered by the Cable Company to the purchaser, Bazemore, and he has remained in possession of it ever since. Bazemore never paid for the piano. Several hundred dollars of the purchase price remains unpaid.

Bazemore filed his voluntary petition in bankruptcy March 11, 1911; his schedule showing that he was indebted to the Cable Company in the sum of $450. On that day he was adjudicated a bankrupt. On March 27th the Cable Company filed its petition praying for an order requiring the bankrupt to surrender to it the piano. W. T. Stewart, having been appointed trustee of the bankrupt, resisted the petition of the Cable Company, and, as trustee, claimed the piano. It does not appear that the bankrupt had any judgment creditors or creditors with liens.

The case being submitted to the referee on the foregoing facts, he held that the title of the trustee was superior to that of the Cable Company and entered an order to that effect, dismissing the company's petition. This order was confirmed by the District Court. The order of the District Court is assigned as error in the petition of the Cable Company filed in this court praying for its revision and reversal.

The two questions argued here and considered by the court below are: (1) Does the amendment to the bankruptcy act (hereinafter quoted) vest in the trustee the right of a judgment creditor without notice to hold the property sold as against the conditional vendor? (2) Was there a compliance with the Alabama statute requiring the registration of contracts of conditional sales?

If the record of the contract of conditional sale without the record of the "contract note" was a sufficient compliance with section 3394 of the Code of Alabama (1907), the other question argued becomes immaterial so far as this case is concerned.

The material part of the section is that:

"Contracts for the conditional sale of personal property, by the terms of which the vendor retains the title until payment of the purchase money and the purchaser obtains possession of the property, * * * are, as to such condition, void against purchasers for a valuable consideration, mortgagees and judgment creditors without notice thereof, unless such contracts are in writing and recorded in the office of the judge of probate of the county in which the party so obtaining possession of the property resides, * * * and if, before the payment of the purchase money * * * the property is removed to another county, the contract must be again recorded, within three months from the time of such removal, in the county to which it is removed."

By the letter of the statute, whether the contract is recorded or not, the condition remains valid between the parties and is void only against the classes named, including "judgment creditors without notice thereof." At the date of the conditional sale, which occurred in September, 1908, the record of the contract was not required to prevent the condition becoming void as against the purchaser's trustee in bankruptcy representing creditors without liens. Such condition, without record, was at that time certainly valid as against the trustee

in bankruptcy. Stewart v. Platt, 101 U. S. 731, 25 L. Ed. 816; Crucible Steel Co. of America v. Holt, 174 Fed. 127, 98 C. C. A. 101. The contention of the trustee is that the amendment to the bankruptcy act passed June 25, 1910, vests him with the same right that a judgment creditor would have to hold the property as against the vendor. The amending act is here inserted; the change made being shown by italics:

"Sec. 8. That section forty-seven, clause two, of subdivision a, of said act as so amended be, and the same hereby is, amended so as to read as follows:

"'Collect and reduce to money the property of the estates for which they are trustees, under the direction of the court, and close up the estate as expeditiously as is compatible with the best interests of the parties in interest; *and such trustees, as to all property in the custody or coming into the custody of the bankruptcy court, shall be deemed vested with all the rights, remedies, and powers of a creditor holding a lien by legal or equitable proceedings thereon; and also, as to all property not in the custody of the bankruptcy court, shall be deemed vested with all the rights, remedies and powers of a judgment creditor holding an execution duly returned unsatisfied.*'" 36 Stat. 840.

The District Court sustained the trustee's contention that there had been no sufficient recording of the contract of conditional sale, and that the effect of the amendment was to vest the trustee with all the rights of a judgment creditor with a lien, and that his claim was therefore superior to that of the vendor who had retained the title. It was noted by the learned judge in the opinion that the District Court of Kentucky (In re Lausman, 183 Fed. 647) had reached a different conclusion as to the proper construction of the amendment. The view we take of the case makes it unnecessary for us to decide upon these conflicting views as to the effect of the amendment.

It is evident that, if there was a compliance with the statute which we have quoted, requiring registration of the conditional sale (Code of Alabama 1907, § 3394), the condition would be valid even as against judgment creditors of the bankrupt; and, conceding, but not deciding, that the construction placed on the amendment by the court below is correct, and that the amendment is applicable to the failure to record contracts existing a year before its passage, the conditional sale would remain valid against the bankrupt's trustee, for his right cannot be held superior to that of judgment creditors.

We find it necessary, therefore, to consider only the correctness of the decision that the record of the contract of sale was insufficient because of the failure to record the "contract note."

The contract of conditional sale, which was duly recorded, states clearly that the bankrupt had purchased the piano from the Cable Company, the amount of the purchase price, that $450 of the price remained unpaid, and that $25 was to be paid October 15, 1908, and $15 on the 15th of each month thereafter until the remainder was paid, with interest from date at 4 per cent. per annum, "as evidenced by contract note of even date herewith." Then follows the clause retaining title:

"Title to said property to remain in the Cable Company * * * until said obligation is fully satisfied."

It will be observed that the "contract note" is not made a part of the instrument recorded. It is referred to only as evidence of the debt for the purchase money bearing 4 per cent. interest. The reference to the note is in the language often found in mortgages to secure sums "evidenced" by notes, and it has never been deemed necessary to record the note with the mortgage because it is referred to in the mortgage. Ordinarily, the fact that a note or bond is referred to in the recorded instrument is not sufficient reason for making the record invalid because the note or bond is not also recorded. In Chapin v. Cram, 40 Me. 561, it was held that it is not essential to the validity of a mortgage of personal property that a schedule of goods therein referred to, but not made a part of it, should be recorded. In Shuler v. Boutwell, 18 Hun (N. Y.) 171, a chattel mortgage made the debt payable as follows:

"The said principal sum and interest to be paid immediately at the expiration of five years from date, except in case default should be made in the performance of the conditions of a certain agreement this day executed by," etc.

This agreement provided that the debt was to be paid in monthly installments of $50 each. It was held that the mortgage was not invalidated by the failure to file or record the agreement referred to. The fact that it may be necessary to refer to some other instrument to ascertain the exact rights and liabilities of the parties does not make the record of the instrument, whether a mortgage or a conditional sale, less effective as notice to third persons dealing with the property. In Byram v. Gordon, 11 Mich. 531, it was held that, where a chattel mortgage is given to secure the performance of a written agreement, the latter is no part of the mortgage and is not required to be filed and recorded with it in order to render the mortgage operative against third persons.

The object of the Alabama statute is the same as that of statutes requiring the record of conveyances of real estate and mortgages of personal property. The purpose is to protect third parties dealing with the property by imparting notice to them of the condition of its title. Burbank v. Conrad, 96 U. S. 291, 292, 24 L. Ed. 731. In Bacon v. Northwestern Life Ins. Co., 131 U. S. 258, 262, 9 Sup. Ct. 787, 33 L. Ed. 128, one of the contentions made was that the mortgage was not duly recorded "for the reason that the agreement of November 29, 1848, which is referred to and in all its terms and conditions adopted and made part of the mortgage, was not recorded." The court refused to sustain this contention, saying that "the object of recording the mortgage is to give notice to third persons." It is true that the decision is based partly on the ground that the mortgage, whether recorded or not, would be good as between the parties to it. But there is no hint that the record would have been defective as notice to third parties because of the fact that an instrument referred to in the mortgage and made part of it was not recorded. When the recorded instrument is complete in itself, showing the condition upon which the sale is made, and gives the facts necessary to fully inform any one investigating the title to the property where the title lies and

the amount that it is necessary to pay to cause a change of title, it would seem useless to record other contracts for the purpose of giving notice to third parties, however important they might be as between the parties to the conditional sale.

It is insisted that the "contract note" is a part of the agreement between the parties inasmuch as it is referred to in the recorded contract of sale. For certain purposes that may be true.

A mortgage or trust deed securing large sums represented by numerous negotiable bonds of various denominations is an instrument in constant use and is required to be recorded by a statute similar to the one which requires the record of a conditional sale. Code of Alabama 1907, § 3383. Such mortgage invariably refers to the bonds which it is given to secure. But it has never been held that it is necessary to record the bonds to make the registration of the mortgage sufficient notice. Yet, in a sense, the bonds constitute a part of the transaction, and it is often necessary to refer to them to ascertain the amount of the outstanding debt and for other purposes.

The "contract note" in the instant case contains a substantial repetition of the terms of the contract of conditional sale. It shows a debt of $450, payable in 16 payments, one of $25 and the others of $15 each, as does also the recorded contract. If instead of one "contract note" there had been sixteen, one for each payment, with a repetition in each of the terms of the conditional sale, and the reference had been to "contract notes" instead of to a "contract note," would any one contend that it would be necessary to record every one of the sixteen notes to comply with the statute? The principle involved is the same whether the reference is to one "contract note" or to sixteen "contract notes." In such case the conditional contract of sale and the sixteen notes would be, in a sense and for some purposes, all parts of one agreement, but not, we think, for the purpose of record under the statute to give notice.

If there had been no written contract showing the condition upon which the sale was made except the "contract note," its record would have been necessary to protect the seller against judgment creditors of the buyer, and its record would have been sufficient notice. Brandon Printing Company v. Bostick, 126 Ala. 247, 28 South. 705.

But it is contended that it was necessary to record the "contract note" because it contains some stipulations not found in the recorded contract of sale. One difference pointed out is that the "contract note," upon default of payment of one installment, authorized the seller to reclaim the property. The legal effect of the recorded contract is the same. The seller in a contract of conditional sale may take peaceable possession of the property after a breach of the condition. Stowers Furniture Company v. Brake, 158 Ala. 639, 48 South. 89. Another difference is that the "contract note" provides that the seller may, on default of payment of one installment, declare all installments due. This provision does not appear in the recorded contract of sale. But if the seller were to declare the entire debt due and reduce it, together with attorney's fees allowed, to judgment, the title would still remain in the seller till the judgment was paid. E.

E. Forbes Piano Company v. Wilson, 144 Ala. 586, 39 South. 645. Another difference is that the "contract note" provides that, if the seller exercises its option to retake the property on default, the payments already made should be forfeited by the buyer as liquidated damages. Such is the legal effect of the recorded instrument, and such provision in the "contract note" is superfluous. Riley v. Dillon & Pennell, 148 Ala. 283, 41 South. 768. Besides, it should be remembered that the Cable Company is not asserting any rights under the "contract note." It claims the property by the title retained in the recorded conditional sale. If material differences exist between the recorded instrument and the unrecorded note, and the Cable Company was asserting a claim under the latter, we would have before us a question not raised by this record.

We are of the opinion that the District Court erred in dismissing the petition of the Cable Company.

The decree is reversed, with directions to enter an order awarding the property in question to the petitioner.